## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID HECKNER and ANDREA HECKNER, and ROBIN BARDSLEY individually and on behalf of themselves and all others similarly situated,<br><br>      Plaintiff,<br><br> v.<br><br>LG ELECTRONICS USA, INC,;<br><br>      Defendant. | Case No. _____<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

### PLAINTIFFS' CLASS ACTION COMPLAINT

Plaintiff David and Andrea Heckner, and Robin Bardsley ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this action against Defendant LG Electronics USA, Inc. (the "Defendant" or "LG") and state as follows:

### I. NATURE OF THE ACTION

1. This class action arises from LG's knowing sale of LG-brand refrigerators equipped with defective ice machines that produce so called "Craft Ice," large balls of slow-melting ice intended for use in beverages ("Class Refrigerators"). Class Refrigerators include all LG-brand models equipped with the Craft Ice Maker feature, which, upon information and belief, LG brought to market in approximately 2019.

2. Each and every Class Refrigerator suffers from an identical, latent, and pervasive defect in materials, workmanship, and design that eventually renders the Craft Ice Maker equipped

1

in Class Refrigerators—which are identical from an assembly and mechanical engineering standpoint regardless of the model in which they are equipped—inoperable well in advance of the refrigerator's service life (the "Defect").

3.      Specifically, as a direct and proximate result of the Defect, the Class Refrigerators' Craft Ice Maker—whether originally equipped in Class Refrigerators or installed as a replacement part after the original eventually fails—freezes, jams and ceases to operate within months of use.

4.      LG has been aware of the Defect since at least November 2020, long before Plaintiffs or most Class members purchased their Class Refrigerators, when it began receiving complaints from consumers concerning the Defect.

5.      LG also learned of the Defect through internal, non-public sources, including repair and warranty data, and product performance data. LG acquired the latter directly from the field because Class Refrigerators are "smart" appliances that are connected to WiFi and communicate various information to LG in real-time, including error codes concerning product malfunctions, including failures of the Craft Ice Maker.

6.      Although LG has known, or has had reason to know, that Class Refrigerators are Defective and unfit for their ordinary and intended purpose, and are incapable of performing as warranted, LG failed to disclose this material fact to Plaintiffs and the Class.

7.      The existence and nature of the Defect is material to Plaintiffs and the Class. As detailed below, LG heavily marketed the Craft Ice feature in order to entice consumers to purchase Class Refrigerators at a premium over competitive offerings.

8.      Adding insult to injury, consumers like Plaintiffs not only report that the Craft Ice Makers fail during normal and foreseeable use, but also that the replacement Craft Ice Makers installed by LG likewise are inherently defective and certain to fail. There simply is no way for

Plaintiffs and the Class to return their Class Refrigerators to working order, because there is no remedy for the Defect.

9.      Due to the lack of a permanent "fix," LG's warranty offers little in the way of actual relief and fails of its essential purpose. Indeed, once LG's one-year "labor and parts" warranty expires, LG claims the Defect does not exist and/or declines to provide further warranty coverage, requiring consumers who have not purchased an extended warranty to pay out-of-pocket to return their Class Refrigerators to proper working order only temporarily, even if LG previously replaced the Craft Icemaker while under warranty.

10.      LG's unlawful conduct placed Plaintiffs and the Class in an impossible situation. Once the Defect manifests, their only options are to purchase a non-defective refrigerator to replace a Class Refrigerator for which they paid a premium, keep their defective Class Refrigerator and pay for multiple repairs, or forgo using the Craft Ice Maker feature, without which they would not have bought Class Refrigerators in the first place.

11.      Accordingly, Plaintiffs, on behalf of themselves and all others similarly situated, bring this Action to redress LG's violations of state consumer protection laws, and also to seek recovery for breach of express warranty, breach of implied warranty and unjust enrichment.

## II.      PARTIES

### Plaintiffs David and Andrea Heckner

12.      Plaintiffs David Heckner and Andrea Heckner (the "Heckners") are residents of Wisconsin.

13.      In July 2021, the Heckners purchased an LG model LRMVS3006S/01 Class Refrigerator from Home Depot. This model is a 30 cubic foot WiFi enabled InstaView Door in Door refrigerator equipped with a Craft Ice Maker.

3



14.    The Heckners paid $4,051.50, inclusive of tax, for the refrigerator. Prior to purchasing the refrigerator, the Heckners visited the LG Website and the Home Depot website. The Heckners researched other refrigerator brands, but ultimately decided on LG because of the brand's perceived quality and the features available in the particular refrigerator model they ultimately purchased, including the Craft Ice Maker**.**

15.    The Heckners purchased the LG refrigerator model with the Craft Ice feature and paid a premium for that feature because they specifically wanted to have the ability to make slow-melting round ice. This feature, which was not available in competitor refrigerators, was the single most important distinguishing feature informing the Heckners' purchasing decision.

16.    Nowhere did LG disclose the Defect, whether at the point of sale or otherwise.

17.    The refrigerator was delivered in August 2021. Within eight months of delivery, the Heckners began experiencing the Defect. Specifically, the Craft Ice Maker stopped generating Craft Ice in either the three- or six-round setting, made a very loud banging noise, and leaked water into the freezer compartment, which froze into a sheet of ice.

18.     The Defect thus deprived the Heckners of the single distinguishing feature of their LG refrigerator, which led to them purchasing a Class Refrigerator at a premium over competitive offerings.

19.     On approximately February 19, 2022, the Heckners contacted LG and requested a warranty repair. In March 2022, an LG licensed technician replaced the Craft Ice Maker.

20.     The replacement Craft Ice Maker worked until approximately mid-September 2022. As before, the Craft Ice Maker again stopped generating Craft Ice in either the three- or six-round setting, made a very loud banging noise, and leaked water into the freezer compartment, which froze into a sheet of ice.

21.     On approximately September 19, 2022, the Heckners contacted LG and requested that it, for a second time, replace the Craft Ice Maker under warranty. LG refused, claiming that the refrigerator was no longer under warranty, despite the fact that the Craft Ice Maker currently equipped in the Heckners' Class Refrigerator is a warranty replacement installed less than a year prior.

22.     Due to the out-of-pocket costs associated with the repair, the Heckners have been forced to forego the use of their Class Refrigerator's Craft Ice Maker.

23.     As a result of LG's refusal to cure the Defect, the Heckners have been deprived of the benefit of the parties' bargain. Had LG disclosed the Defect prior to purchase, the Heckners would not have purchased a Class Refrigerator.

***Plaintiff Robin Bardsley***

24.     Plaintiff Robin Bardsley is a resident of Minnesota.

25.     Plaintiff Bardsley purchased a model number LRFXC2416D/01  Class Refrigerator from Warners' Stellion, an appliance store chain[1], in June 2021 for approximately $3,300. This model is a 24 cubic foot, WiFi enabled refrigerator equipped with a Craft Ice Maker.

26.     The refrigerator was delivered to Plaintiff Bardsley in September 2021.

27.     Prior to purchasing the refrigerator, Bardsley viewed internet advertisements for Class Refrigerators. Additionally, sales personnel at Warners' Stellion assured her that the LG refrigerator she was purchasing was a "top of the line, high quality and reliable" model which made slow-melting round ice.

28.     Bardsley purchased a Class Refrigerator at a premium because she specifically wanted the ability to make slow-melting round ice. This feature, which was not available in competitors' refrigerators, was the single most important distinguishing feature informing Bardsley's purchasing decision.

29.      Nowhere did LG disclose the Defect, whether at the point of sale or otherwise.

30.     In January 2022, Bardsley's refrigerator began experiencing the Defect. Specifically, the Craft Ice Maker stopped generating Craft Ice in either the three- or six-round setting and leaked water into the freezer compartment, which froze into a sheet of ice.

31.     Bardsley took a photograph of the accumulated water, which froze in the ice bin and the freezer compartment.

---

[11] https://www.warnersstellian.com/about-us (last visited on Nov. 15, 2022).



32.     LG offers support for its products through a live chat feature available on its website, as well as a telephone text feature available after a customer contacts LG by phone. In or around the end of January 2022, Bardsley called LG and, after working through a menu of options, connected to LG's text chat. There was no option to contact a live person by phone. Bardsley continued communicating by text with an auto-attendant but was unable to connect with a live representative after an hour of trying. She disconnected after waiting for an hour without reaching an LG representative.

33.     After her failed attempt, in February 2022, Bardsley attempted troubleshoot the Defect, but her efforts resolved the Defect only temporarily.

34.     By the end of July 2022, the Defect recurred. Bardsley again called LG, and again was forced to utilize the texting option to communicate with an auto-attendant.

35.     LG refused to confirm it would offer in-warranty repairs, and instead offered only to schedule a service appointment, for which Plaintiff Bardsley would be charged $100.00.

Because Plaintiff Bardsley's Class Refrigerator manifested the Defect during the warranty period, she refused to pay out-of-pocket for a service visit and declined LG's offer.

36.     Due to the out-of-pocket costs associated with the repair, Plaintiff Bardsley has been forced to forego the use of her Class Refrigerator's Craft Ice Maker.

37.     As a result of LG's refusal to cure the Defect, Bardsley has been deprived of the benefit of the parties' bargain. Had LG disclosed the Defect prior to purchase, Bardsley would not have purchased a Class Refrigerator.

### *Defendant LG*

38.     Defendant LG is a Delaware corporation with its headquarters in Englewood Cliffs, New Jersey. LG manufactures and sells mobile devices, home entertainment devices, and home appliances, including Class Refrigerators as alleged herein.

### III.    JURISDICTION AND VENUE

39.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (i) there are 100 or more Class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.

40.     This Court also has subject matter jurisdiction over Plaintiffs' Magnuson-Moss Warranty Act claim, 15 U.S.C. § 2301 *et seq.*, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

41.     This Court has personal jurisdiction over LG because it is headquartered in this district, has conducted substantial business in this district, and intentionally and purposefully

placed Class Refrigerators into the stream of commerce within New Jersey and throughout the United States.

42.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because LG is headquartered and regularly transacts business in this district, is subject to personal jurisdiction in this district, and, therefore, is deemed to be a citizen of this district. Additionally, LG advertises in this district and has received substantial revenue and profits from its sales of Class Refrigerators in this district. Therefore, a substantial part of the events and/or omissions giving rise to the claims herein occurred, in part, within this district.

## IV.    FACTUAL ALLEGATIONS

### A. Class Refrigerators

43.    In September 2019, LG released the first-ever "Craft Ice" Refrigerator--the LG InstaView Door-in-Door Refrigerator with Craft Ice. These Refrigerators were the first and only advertised as capable of producing three custom types of ice: slow-melting, round LG Craft Ice in the freezer drawer, and cubed and crushed ice in the door. "Craft Ice" refers to LG's trademarked term for slow-melting round ice (measuring various inches in diameter), which LG advertises as "one of the hottest beverage trends."[2]

44.    Since 2019, LG has released various iterations and models of Class Refrigerators, all of which are equipped with a Craft Ice Maker.

---

[2] https://www.lg.com/us/discover/instaview-door-in-door/craft-ice#:~:text=Craft%20Ice%E2%84%A2%20delivers%20slow,expensive%20and%20time%2Dconsuming%20molds.
(last visited on Nov. 15, 2022).

45.     Since their debut, LG has consistently advertised the premium benefits of Class Refrigerators due to the Craft Ice Maker, i.e., its ability to "open up a new world of high-end drinks"[3] and "a new frontier for home mixologists and cocktail connoisseurs."[4]

46.     Class Refrigerators quickly became "key products" in LG's Home Appliance division,[5] and the Craft Ice Maker itself became one of the focal points of LG's marketing strategy, through which LG positioned Class Refrigerators as premium offerings relative to appliances sold by competitors like Samsung, GE and Bosch.

47.     For example, one ad encouraged consumers to "Be a Baller" by purchasing a Class Refrigerator equipped with a Craft Ice Maker.[6]



---

[3] *Id.*
[4] https://www.prnewswire.com/news-releases/lg-expands-industry-first-craft-ice-feature-to-more-refrigerator-models-in-2020-300989701.html (last visited Nov. 15, 2022).
[5] LG 2Q Earnings Release at pg. 5, available at https://www.lg.com/global/investor-relations-reports (last visited on Nov. 15, 2022).
[6] https://www.lg.com/us/discover/instaview-door-in-door/craft-ice (last visited on Nov. 15, 2022).

48.    Through its marketing campaigns, LG thus led consumers to believe that the Class Refrigerators are high quality, dependable offerings, and capable of producing Craft Ice, which is a feature unique to LG refrigerators. Consequently, consumers were willing to pay more for LG's refrigerators, like the consumer who posted the following review[7] to LG's website:

★☆☆☆☆  Lizardman · 8 months ago

craft ice make broken again

We bought this at Costco in 2019 because they double the 1 yr warranty. Less than a year in the craft icemaker stopped working. LG replaced it then just past the 2yr mark the craft ice maker stopped again. This time out of warranty. Spoke to an LG tech and he says he replaces these every week. He says so does the other 30 techs he works with. I can't believe LG hasn't fixed this or at least offer free replacement until they make one that doesn't fail. The only reason we bought it was for the craft ice maker. Stay Away!!

49.    However, as described herein, the Class Refrigerators do not work as advertised or promoted. Class Refrigerators instead suffer from a pervasive and irreparable defect in materials, workmanship and/or design that cause the Craft Ice Makers equipped therein to fail and, at minimum, cease producing Craft Ice.

**B.  The Defect**

50.    Due to a defect in materials, workmanship and/or design, the Craft Ice Makers in the Class Refrigerators—which are identical from an internal design, assembly, and mechanical engineering standpoint—and their constituent components freeze over, preventing the device from generating Craft Ice.

---

[7] The complaints and reviews posted herein are exemplar reviews only, and represent only a fraction of the reviews and complaints concerning the Craft Ice Maker posted to LG and third-party websites.

51.     Additionally, when the Defect manifests, the failed Craft Ice Maker, although unable to produce ice, continues to attempt to do so, creating in the process a sound that some consumers describe as a "jack hammer,"[8] which in turn leads many appliance owners to shut the Craft Ice Makers off to avoid further disruption.

Mine sounds like a jack hammer. It appears that the mechanism is sticking to the ice and not opening. I cleared it out and put a little olive oil on the ball mold. Helps for a little while but it comes back. Doesn't seem to be a well thought out mechanism . Shouldn't be happening on a $3500 fridge. I don't know the solution , lg doesn't seem to know the solution but not happy with it

Answered by Wfhuntr 10 months ago

52.     In some cases, because the Craft Ice Maker has ceased to function, Class Refrigerators also are unable to utilize the filtered water directed toward the Craft Ice Maker, which causes water to leak into the freezer compartment and create sheets of ice in the ice bin and in the freezer compartment itself.[9]

Ours just started doing this too. The balls don't eject when it cycles then it fills with water so we get a tray of flat ice with a few ice balls frozen in. Service call I guess. Really concerned this is going to be a common issue.

Answered by toomanyhobbies 1 year ago

53.     The Defect manifests during the expected useful life of the Class Refrigerators, both within and outside the applicable warranty period. Plaintiffs and consumers expected their Class Refrigerators to make Craft Ice during the entire useful life of their refrigerators, yet the

---

[8] https://www.bestbuy.com/site/questions/lg-23-5-cu-ft-french-door-counter-depth-refrigerator-with-craft-ice-stainless-steel/6395325/question/2eafebc9-1e82-380f-a952-c03ef8ccfc5d (last visited Nov. 15, 2022).
[9] *Id.*

Defect causes their Craft Ice Makers to fail within months (and sometimes even weeks) after purchase.

54.    Unfortunately for consumers, even when LG agrees to replace the Craft Ice Maker under warranty, it does so using similarly defective replacement parts that likewise are guaranteed to fail.

55.    Examples abound of customers having to suffer through repeated repairs and replacements.[10]

> This appears to be a common issue. We have had LG replace our craft ice maker 3 times now, and it started doing it again. It sounds like a jackhammer when trying to eject the ice. it seems the Craft ice maker went to market without proper QA testing.
>
> Answered by canyonpark 1 year ago

[11]

> ★★★★★ KYELE · 25 days ago
> DO NOT BUY
>
> PURCHASED THIS BEAUTY MARCH 2021 AND WORKED LIKE A CHARM FOR A YEAR. CRAFT ICE NO LONGER IS APPEARING. TECH HAS COME OUT 5 TIMES REPLACED THE ICE MAKER AND BOARD AND STILL NO ICE! THIS IS NOT WORTH THE MONEY OR TIME. BEWARE OF THIS BEAUTIFUL MODEL. LOOKS ARE DECEIVING READ UP ON IT. I AM NOT THE ONLY ONE WITH ISSUES.

> ★★★★★ Rex H · 8 months ago
> PROBLEMS WITH CRAFT ICE MAKER
>
> Purchased Sept. 2021. Craft Maker worked fine until end of Dec. 2021. Water began spilling over into the ice bin and freezing. Have had repaired under warranty 3 times, and waiting on 4th repair to be scheduled. The previous repair service company gives up, so waiting for LG to find another repair service. DISAPPOINTED

56.    As a result, Class members have attempted to develop troubleshooting techniques aimed at curing the Defect, but all offer only temporary relief.

---

[10] *Id.*

[11] *Id.*

57.     For example, when a fellow Class member complained on a public forum, one customer suggested they power down the Craft Ice Maker for a few days in order to restore functionality.[12] The responding customer suggested they turn off their Craft Ice Maker, wait a few days, remove the ice bucket and reset the Craft Ice Maker. The responding consumer also stated that they had experienced the Defect on multiple occasions, thereby showing that their troubleshooting suggestion did not offer a permanent solution.[13]

> I am having a similar issue with my craft icemaker on a new fridge installed 7 months ago. I opened the drawer to find frozen ice in the craft ice tray (along with 3 ice balls) and the water had run over in to the lower tray and frozen all my items together in one large mass. Not thrilled with this brand as of yet. I also found that my fridge doesn't show up as registered and can't get it to update. I finally gave up and turned off the craft ice maker. I have to look into a service call next.
>
> Answered by Shefly1A 11 months ago

> Turn off the ice maker for a couple of days. After the 2 days, remove the ice bucket, turn on the ice maker and push the reset button(little square button up and under the front panel of the ice maker). You may need the assistance of small mirror or use your cell phone and reverse the view so you can see the reset button. When you push the button, it will activate the "dumping mode" and the balls of ice will be hanging from the silicone molds they are stuck to. Grab them quickly before the mechanism closes again. You will probably have three ice balls stuck together. After removal, the water will fill the molds as usual. This will allow the ice to start forming as normal. Wait 24-36 hours for the next batch to cycle through. This overflow situation has happen to me twice in the past, and this is how I fixed it.
>
> Answered by MAUMAU 6 months ago

58.     Another consumer suggested using olive oil to troubleshoot the Defect. However, the customer also conceded that the fix was temporary.[14]

> Mine sounds like a jack hammer. It appears that the mechanism is sticking to the ice and not opening. I cleared it out and put a little olive oil on the ball mold. Helps for a little while but it comes back. Doesn't seem to be a well thought out mechanism . Shouldn't be happening on a $3500 fridge. I don't know the solution , lg doesn't seem to know the solution but not happy with it
>
> Answered by Wfhuntr 10 months ago

---

[12] https://www.bestbuy.com/site/questions/lg-23-5-cu-ft-french-door-counter-depth-refrigerator-with-craft-ice-stainless-steel/6395325/question/2eafebc9-1e82-380f-a952-c03ef8ccfc5d (last visited on Nov. 15, 2022).
[13] *Id.*
[14] *Id.*

59.     Some Class members have even resorted to using hair dryers to warm the Craft Ice

Maker in hopes of "unclogging" it.[15, 16]

> Our Craft Ice got stuck too. I turned off the icemaker, pulled out the top drawer so I could
> access the stuck balls better. I used my hair blow **dryer** to melt the ice a bit first. Then I held
> down the reset button to make the mold tip. The first time I couldn't wiggle the ice loose, so I
> used the blow **dryer** a couple of minutes longer and tried again. This time, I used a spoon to
> loosen the balls and out they popped. Wishing LG would fix this problem because it seems
> that it happens a lot.
>
> Answered by KarenB 2 months ago
>
> I'm experiencing the same issue. I can get the tray to drop and eject by heating with a hair
> **dryer**, then pushing the reset button. Problem is not solved though.
>
> Answered by MarkY 1 year ago
>
> Mine is doing the same thing. About 1 month out of warranty of course. I have used the hair
> **dryer** technique as well. But when it happens at 2:00am and wakes up the whole house it is
> pretty annoying.
>
> Answered by Wesnmegan 1 year ago

60.     In theory, there is only one way to permanently cure the Defect: replace the failed

Craft Ice Maker with a non-defective replacement part. LG, however, has not released a non-

defective Craft Ice Maker, leaving consumers with no way to cure the Defect.

**C.  LG's Knowledge of the Defect**

61.     Before LG sold the Class Refrigerators—whether to Plaintiffs specifically or the

Class generally—it knew or had reason to know that the Class Refrigerators suffered from the

Defect, yet it made no effort to resolve the Defect prior to placing the Class Refrigerators into the

stream of commerce.

---

[15] *Id.*

[16] *Id.*

62.     LG is a sophisticated, longtime designer and manufacturer of refrigerators and other appliances, and presumably subjected the Craft Ice Maker to rigorous prerelease testing that would have revealed the Defect.

63.     LG nevertheless continued to manufacture and sell Class Refrigerators equipped with the defective Craft Ice Makers, and its efforts to produce Craft Ice Makers that resolve the Defect's underlying root cause have come up short. As Plaintiffs' and the Class' experiences show, neither replacing the Craft Ice Maker or troubleshooting the Defect offer a permanent solution.

64.     Consumers have complained repeatedly to LG about the Defect on message boards, social media, and other websites since as early as November 2020, but LG refuses to properly address and rectify the problem, and has failed and refused to reimburse customers for repairs and/or replacement costs. The following are just some complaints from the LG website to which LG has responded, thereby demonstrating its awareness of both the Defect's existence and its effect on customers.

65.     The following exemplar complaints posted to LG's and third-party websites—all of which LG responded to and the earliest two of which date to (at the latest) November 2020, demonstrate LG's longstanding knowledge of the Defect.[17, 18, 19]



★★★★★ Lindyloo · 2 years ago
CRAFT ICE MAKER

Purchased July 2019. After receiving four damaged refrigerators, finally received one in November 2019. In November 2020 the Craft ice-maker stopped working and started leaking water into the ice tray. LG would not cover my warranty from the date refrigerator was received -- only from the purchase date. It is out of warranty!

Recommends this product  ✗ No

Originally posted on LRFVS3006D

---

[17] https://www.lg.com/us/refrigerators/lg-lrfvs3006s-instaview-refrigerator/reviews (last visited Nov. 15, 2022).
[18] *Id.*
[19] https://www.lg.com/us/refrigerators/lg-lrfvc2406s-instaview-refrigerator (last visited Nov. 15, 2022).



RESPONSE FROM LG ELECTRONICS:

LGE Social Media · 2 years ago

We hate to hear that you experienced a problem with your unit. Your feedback is especially important to us and your concerns will be shared with our marketing and product teams. We work continuously to improve the quality of our products and anticipate market demands that drive customer satisfaction. If you have questions or further concerns, please reach out to our support team on Twitter via @LGUSSupport or on Facebook at https://www.facebook.com/LGUSA/. We apologize for the inconvenience and frustration caused. ^Daphane

★★★★ Aleland2 · 2 years ago
CRAFT ICEMAKER STOPPED WORKING

We bought this item in August 2020 and it did not get delivered till October 2020 therefore it is only three months old and the craft icemaker is leaking water into the bin and now has completely stopped making ice just leaking water

RESPONSE FROM LG ELECTRONICS:

LGE Social Media · 2 years ago

We hate hearing your unit is not working properly. I'd like to see if we can help. Please contact LG Customer Support by direct message via Twitter (@LGUSSupport) or Facebook Messenger (https://www.facebook.com/LGUSA/). Please be sure to provide your contact information, model/serial numbers, and date of purchase so that we can better investigate and quickly assist you with a resolution, where possible. We apologize for any inconvenience this has caused. ^Daphane

★ Lizardman · 8 months ago
craft ice make broken again

We bought this at Costco in 2019 because they double the 1 yr warranty.
Less than a year in the craft icemaker stopped working. LG replaced it then just past the 2yr mark the craft ice maker stopped again. This time out of warranty. Spoke to an LG tech and he says he replaces these every week. He says so does the other 30 techs he works with. I can't believe LG hasn't fixed this or at least offer free replacement until they make one that doesn't fail. The only reason we bought it was for the craft ice maker. Stay Away!!

Recommends this product  X No

Helpful?    Yes · 19     No · 0     Report

Response from LG Electronics:

Social Media · 8 months ago

We sincerely hate to hear this and will pass this feedback along.^Sandy

66.    LG also gained exclusive and superior knowledge of the Defect before Plaintiffs and the Class purchased the Class Refrigerators through a variety of additional sources unavailable to consumers, including warranty claims made to LG and its sellers, repair rates, replacement part sales data, and LG's pre- and post-release testing of the Class Refrigerators and their constituent components. Indeed, LG tracks warranty repairs in order to identify emerging defect trends, and

as an experienced manufacturer of consumer appliances, it tests each and every component, including the Craft Ice Makers, prior to approving them for use in units destined for retail sale.

67.     LG employs authorized service technicians whom LG dispatches to repair both in- and out-of-warranty appliances, including Class Refrigerators.[20] LG has been dispatching only authorized repair technicians to repair appliances since at least 2014, long before it brought the Class Refrigerators to market.[21]

68.     In order to provide in-warranty repairs at no cost to consumers, LG must first approve necessary repairs, and thus requires authorized technicians to diagnose the root cause of any appliance malfunction and apprise LG of the same prior to approving or denying a warranty claim. LG's warranty practices thus enable it to monitor and identify emerging product defect trends like the Defect alleged herein.

69.     Plant-based quality assurance personnel also routinely monitor and "[a]nalyze quality control test results and provide feedback and interpretation to production management or staff" in order to "[c]ommunicate quality control information to all relevant organizational departments, outside vendors, or contractors …."[22]

70.     LG also would have learned of the Defect from performance data transmitted by Class Refrigerators directly to LG.

71.     Class Refrigerators are "smart," WiFi enabled appliances. Smart functionality allows product owners to interact with their devices remotely, but also enables Class Refrigerators to transmit to LG data concerning product performance.

---

[20] *LG Direct Service*, LG, https://www.lg.com/us/support/lg-direct-service (last visited Nov. 15, 2022).

[21] *Repair Service*, LG, https://web.archive.org/web/20140708060803/https://www.lg.com/us/support/repair-service/schedule-repair (cached July 8, 2014).

[22] *Quality engineering*, TARTA.AI, https://tarta.ai/j/drugIYIBRZB4gUQRiVA70722-quality-engineering-in-clarksville-tennessee-at-lg-electronics-n-a-appliance-factory?utm_campaign=google_jobs_apply&utm_source=google_jobs_apply&utm_medium=organic (last visited Nov. 15, 2022).

72.     LG uses the data its smart appliances—including Class Refrigerators—transmit, in order to monitor product performance, identify potential defects and (ideally) develop repairs. LG thus learned of the Defect as soon as the first Class Refrigerator experienced a failure of its Craft Ice Maker.

73.     LG has had to acknowledge the scope and extent of the Defect, publishing several "troubleshooting" videos on YouTube beginning in October 2020.[23] Unfortunately for consumers, LG's troubleshooting tips have proven ineffective.

**D.  Plaintiffs' and the Class' Reasonable Expectations**

74.     Plaintiffs and the Class expected the Craft Ice Makers in the Class Refrigerators to operate for years in accordance with their intended and ordinary purpose: to make slow melting round ice. Indeed, the Craft Ice Maker was central to Plaintiffs' and the Class' purchasing decisions. However, once the Defect manifests, the Craft Ice Maker stops making ice, causes leaks and fails to perform its ordinary and intended purpose.[24]



★★★★★  Kpowell90 · 5 months ago
WORST REFRIGERATOR I HAVE EVER OWNED!!!!!

We bought this refrigerator less than 2 years ago solely because of the craft ice maker. In that time, we have had the craft ice maker replaced twice, the control panel once and we have a service guy coming to replace the ice maker for the 3rd time. Thank God we bought the extended warranty. I have emailed the president of LG stating what a crappy product this is. I doubt they will do anything, but I feel better voicing my opinion.

⊕ Pros:  Style/Design

---

[23] *See, e.g.,* https://www.youtube.com/watch?v=XFj0G2xTZL0 (last visited Nov. 15, 2022); https://www.youtube.com/watch?v=1MmZgeU96V0 (last visited Nov. 15, 2022).
[24] https://www.lg.com/us/refrigerators/lg-lrfvs3006s-instaview-refrigerator/reviews (last visited Nov. 15, 2022); https://www.homedepot.com/p/reviews/LG-Electronics-30-cu-ft-French-Door-Smart-Refrigerator-InstaView-Door-In-Door-Dual-Ice-with-Craft-Ice-in-PrintProof-Stainless-Steel-LRFVS3006S/309931310/5 (last visited Nov. 15, 2022).

★☆☆☆☆                                                                          Oct 20, 2021

**Craft Ice Maker breaks every six months**
The craft ice maker was one of the main features that motivated me to buy this refrigerator. But it broke after 6 months, was replaced by LG, and then broke again (the same way) after six months. As the fridge is now out of warranty and LG says tough luck
by Lalo97

75.     Plaintiffs and the Class also reasonably expected LG to disclose the existence of Defect and the Craft Ice Maker's true performance capabilities. Specifically, LG was duty-bound, but failed, to disclose that the Craft Ice Makers in the Class Refrigerators would fail shortly after purchase.

76.     LG knew that consumers, like Plaintiffs and the Class, expected LG to disclose the Defect that prevented the Craft Ice Makers in the Class Refrigerators from performing their ordinary purpose long before the end of their expected useful lives, and that such disclosure would impact consumers' decisions to purchase the Class Refrigerators at the prices charged. LG knew and intended for consumers to rely on its material omissions with regard to the Defect when purchasing the Class Refrigerators

77.     Because of the Defect, the Craft Ice Makers in Class Refrigerators failed during their expected useful lives—typically within a year of purchase—and otherwise failed to work as promised and advertised by LG, within or outside applicable warranty periods, depriving Plaintiffs and Class Members of the benefit of their bargain and imposing on them actual damages including repair and/or replacement costs, time spent in arranging and obtaining repairs and warranty coverage, and inconvenience.

**E.  Deficient Warranty Performance**

78.     LG provides a limited warranty for the Class Refrigerators that covers defects in materials, workmanship and/or design for one-year, during which time LG will, at its option, repair or replace failed parts.

79.     The Defect arises from defective materials, workmanship, and/or design in the Craft Ice Maker equipped in the Class Refrigerators and therefore should be covered by LG's express warranty. LG, however, cannot honor its warranty obligations because it has not designed a non-defective replacement part. Instead, when consumers like the Plaintiffs attempt to have their Class Refrigerators repaired, (1) they cannot connect with a live LG representative to explain the problem; (2) are told that they have to pay a fee to have a technician come out and diagnose the issue; or, (3) LG replaces the defective Craft Ice Maker with an identically defective replacement Craft Ice Maker that also ultimately fails, and which LG then refuses to replace at no-cost because the one-year parts and labor Warranty has now expired.

80.     LG also was aware, had reason to know, or was reckless in not knowing that its warranty repairs would not cure or rectify the Defect. By providing ineffective warranty repairs, LG merely postponed the failure of the Craft Ice Maker in the Class Refrigerators until after the expiration of applicable warranties, causing the express limited warranty to fail of its essential purpose.

81.     LG's refusal to honor its warranty obligations shifts the costs of the Defect onto its customers post-purchase, because they must pay to repair and replace Class Refrigerators with inherently defective replacement parts or forego the benefit of the Craft Ice Maker feature for which they paid a premium.

82.     Furthermore, if the Defect manifests outside the warranty's durational limits, it should nonetheless be remedied by LG at no cost because the warranty is procedurally and substantively unconscionable. Accordingly, when the Defect arises, LG must be estopped from denying warranty claims on the grounds that the warranty has expired or by relying on remedial limitations contained therein.

83. LG's warranty is procedurally unconscionable because:

    A. Consumers did not have a meaningful opportunity to participate in creating the warranty.

    B. LG is a nationally operating enterprise with substantial market power to dictate the terms of the warranty to consumers.

    C. LG created the warranty with a one-year term that consumers had no choice or ability to alter.

    D. LG offered the warranty to consumers on a "take-it-or-leave-it" basis.

84. LG's warranty also is substantively unconscionable because:

    A. The Class Refrigerators are a durable good.

    B. It is material to a reasonable consumer that the Class Refrigerators last a significant period of time without needing repair or replacement.

    C. Upon information and belief, LG has, at all relevant times, had superior knowledge regarding the Class Refrigerators lack of durability due to its control over the design, manufacture, and/or testing of the Class Refrigerators.

    D. Upon information and belief, LG has had superior knowledge regarding the Class Refrigerators lack of durability as a result of consumer complaints and warranty claims submitted by no later than early 2020.

    E. Despite LG's superior knowledge of the existence of the Defect and the likelihood the Defect will manifest after one-year, LG refused to replace failed Craft Ice Makers under its one-year parts and labor warranty, instead continuing to charge customers for labor to replace a known defective part.

    F. LG's warranty fails of its essential purpose because LG cannot cure the Defect.

85.     No reasonable consumer would enter into an agreement including such terms. Accordingly, LG's warranty is unconscionable and LG must be estopped from enforcing it with respect to the Defect.

## V.     FRAUDULENT CONCEALMENT

86.     LG made material omissions of fact concerning the Defect by not fully and truthfully disclosing to its consumers the true nature of the Class Refrigerators. A reasonable consumer would not have known about the Defect.

87.     LG made these omissions with knowledge of their falsity and intending that Plaintiffs and the Class would rely upon them.

88.     The facts concealed, suppressed, and not disclosed by LG to Plaintiffs and the Class are material in that a reasonable consumer would have considered them to be material in deciding whether to purchase the refrigerators at all or at the offered price.

89.     LG had a duty to disclose the true quality of Class Refrigerators because the knowledge of the Defect and its details were known and/or accessible only to LG; LG had superior knowledge and access to the relevant facts; and LG knew the facts were not known to, or reasonably discoverable by, Plaintiffs and the Class. LG also had a duty to disclose the Defect because it made affirmative representations about the quality of the Craft Ice Makers in the Class Refrigerators, as set forth above, which were misleading, deceptive, and incomplete without disclosing the additional facts set forth above regarding the Defect.

90.     LG concealed this material information for the purpose of inducing Plaintiffs and the Class to purchase the defective Class Refrigerators at full price rather than purchasing competitive offerings or paying LG less for the Class Refrigerators, given their limited utility. Had Plaintiffs and the Class known about the defective nature of the Class Refrigerators, they would

not have purchased them, or would have paid substantially less for them. Thus, through LG's silence Plaintiffs and the Class were fraudulently induced to purchase defective Class Refrigerators.

## VI.    TOLLING OF STATUTE OF LIMITATIONS

91.    LG's knowing and active concealment and denial of the facts alleged herein have tolled any applicable statute(s) of limitations.

92.    Plaintiffs and the Class could not have reasonably discovered the true facts regarding the Class Refrigerators, including the Defect, until shortly before this litigation commenced.

93.    Even after Plaintiffs and the Class contacted LG for repairs and replacement as the result of the Defect, LG routinely failed to provide anything other than an interactive website service while failing to schedule service visits.

94.    LG was and remains undue, a continuing duty to disclose to Plaintiffs and the Class the true facts concerning the Class Refrigerators, *i.e.,* that the Craft Ice Makers in the Class Refrigerators suffer from a Defect in materials and/or workmanship and/or design, and the failings described above, which require Class members to pay out of pocket to repair or replace the Craft Ice Makers in the Class Refrigerators.

95.    As a result of LG's active concealment of and breach of its duty to disclose the existence of the Defect, any and all applicable statute(s) of limitations otherwise applicable to the allegations herein have been tolled.

## VII.   <u>CLASS ALLEGATIONS</u>

96.    Plaintiffs bring this Action on their own behalf and on behalf of the following Classes pursuant to F.R.C.P. 23(a), 23(b)(2) and/or 23 (b)(3). Specifically, the Classes are defined as:

> **Nationwide Class.** All persons or entities in the United States who purchased one or more LG-brand Class Refrigerators.

97.    Or, in the alternative:

> **Wisconsin Subclass**. All persons or entities residing in Wisconsin who purchased one or more LG-brand Class Refrigerators.

> **Minnesota Subclass** – All persons or entities residing in Minnesota who purchased one or more LG-brand Class Refrigerators.

98.    Together, the Nationwide Class, and the Wisconsin and Minnesota Subclasses shall be collectively referred to herein as the "Class." The Wisconsin and Minnesota Subclasses are collectively referred to herein as the "State Subclasses." Excluded from the Class are LG, its affiliates, employees, officers and directors, persons or entities that purchased the Class Refrigerators for purposes of resale, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change or expand the Class definition after conducting discovery.

99.    <u>Numerosity</u>:  The Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the possession of LG and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe that the Class consists of at least hundreds of thousands of persons and entities deceived by LG's conduct.

100.    <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of fact and law exist as to all members of the Class. These questions predominate over

the questions affecting individual Class Members.  These common factual and legal questions include, but are not limited to:

a.   whether LG misrepresented the quality of the Class Refrigerators;

b.   whether the Class Refrigerators had a Defect causing the Craft Ice Maker to malfunction, and result in the Class Refrigerators' Craft Ice Makers failing entirely.

c.   whether LG was obligated to disclose the Defect to consumers but failed to do so;

d.   whether LG's omission was material to Class members;

e.   whether LG's conduct violated the Magnuson-Moss Warranty Act;

f.   whether LG breached its express warranties to the Class;

g.   whether LG breached its implied warranties to the Class;

h.   whether LG's conduct resulted in unlawful common law fraud;

i.   whether LG's conduct resulted in it receiving unjust enrichment at the expense of Plaintiffs and the Class; and

j.   whether Plaintiffs and the Class are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief.

101.   Typicality: All of Plaintiffs' claims are typical of the claims of the Class since each Class Refrigerator was advertised with the same type of false and/or misleading statements, regardless of model or production year.  Plaintiffs and the Class sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of LG's wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class Members.

102.    <u>Adequacy</u>:  Plaintiffs are adequate Class representatives because their interests do not materially or irreconcilably conflict with the interests of the Class that they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

103.    <u>Superiority</u>:  A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and the Class. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by LG's conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Members of the Class can be readily identified and notified based on, *inter alia*, LG's records and databases.

104.    LG has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

## VIII.   CAUSES OF ACTION

### COUNT I
**BREACH OF WRITTEN WARRANTY**
**UNDER THE MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. § 2301, *et seq.*)**
**(On Behalf of the Nationwide Class, or in the alternative, the State Subclasses)**

105.   Plaintiffs and the Class re-allege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

106.   Plaintiffs and the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

107.   LG is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

108.   The Class Refrigerators are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

109.   LG's warranties are "written warranties" within the meaning of 15 U.S.C. § 2301(6).

110.   LG breached the express warranties by refusing and/or failing to honor the express warranties by repairing or replacing, free of charge, the defective Class Refrigerators.

111.   Plaintiffs and the Class relied on the existence and length of the express warranties in deciding whether to purchase the Class Refrigerators.

112.   LG's breach of the express warranties has deprived Plaintiffs and the Class of the benefit of their bargain.

113.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value

of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

114.    LG has been afforded a reasonable opportunity to cure its breach of the written warranties and/or Plaintiffs and the Class were not required to do so because providing LG a reasonable opportunity to cure its breach of written warranties would have been futile. LG was also on notice of the Defect from the complaints and service requests it received from Plaintiffs and the Class, as well as from its own warranty claims, customer complaint data, and/or parts sales data.

115.    As a direct and proximate cause of LG's breach of the written warranties, Plaintiffs and the Class sustained damages and other losses in an amount to be determined at trial. LG's conduct damaged Plaintiffs and the Class, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees, and/or other relief as deemed appropriate.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (On Behalf of the Nationwide Class, or in the alternative, the State Subclasses)

116.    Plaintiffs and the Class re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

117.    Plaintiffs bring this claim individually and on behalf of the National Class, or, in the alternative, on behalf of the State Class against LG. Plaintiffs' individual claims are brought under the laws of their home states.

118.    LG expressly warranted Plaintiffs and the Class Refrigerators against "defect[s] in materials or workmanship under normal home use." Under the warranty, LG is obligated to repair

or replace the refrigerator/freezer parts free of charge for parts and labor for one year from the date of purchase.

119.    These warranties became part of the basis of the bargain between the parties and created collective express warranties that the Class Refrigerators would conform to LG's affirmations and promises. Under the terms of these express warranties, LG is obligated to repair or replace the Class Refrigerators sold to Plaintiffs and the Class.

120.    The parts affected by the Defect were manufactured and distributed by LG in the Class Refrigerators and are covered by the warranties LG provided all purchasers of Class Refrigerators.

121.    LG breached these warranties by selling Class Refrigerators with the Defect, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties by providing free, effective repairs or replacements during the applicable warranty periods.

122.    As a result of LG's inability to remedy the Defect, LG's warranties fail of their essential purpose.

123.    Plaintiffs and the Class also notified LG of the breach within a reasonable time, and/or were not required to do so because affording LG a reasonable opportunity to cure its breach of written warranty would have been futile. LG also knew of the Defect and yet chose to conceal it and to fail to comply with their warranty obligations.

124.    As a direct and proximate cause of LG's breach, Plaintiffs and the Class bought Class Refrigerators they otherwise would not have, overpaid for their refrigerators, did not receive the benefit of their bargain, and their Class Refrigerators suffered a diminution in value. Plaintiffs

and the Class have also incurred and will continue to incur costs for repairs and incidental expenses.

125.    LG's attempt to disclaim or limit these express warranties extended to consumers is unconscionable and unenforceable under the circumstances here. Specifically, LG's warranty limitation is unenforceable because LG knowingly sold a defective product without informing consumers about the Defect.

126.    The time limits contained in LG's warranty period were also unconscionable and inadequate to protect Plaintiffs and the Class. Among other things, Plaintiffs and the Class had no meaningful choice in determining these time limitations, the terms of which unreasonably favored LG. A gross disparity in bargaining power existed between LG and the Class, and LG knew or should have known that the Class Refrigerators were defective at the time of sale and would fail well before their useful lives expired.

127.    Plaintiffs and the Class have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of LG's conduct described herein.

128.    As a direct and proximate result of LG's breach of express warranties, Plaintiffs and the Class have suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial, including repair and replacement costs and damage to other property.

129.    Plaintiffs and the Class are entitled to legal and equitable relief against LG, including damages, consequential damages, specific performance, attorney fees, costs of suit, and other relief as appropriate.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of the Nationwide Class, or in the alternative, the State Subclasses)

130.    Plaintiffs and the Class re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

131.    Plaintiffs bring this claim individually and on behalf of the National Class, or, in the alternative, on behalf of the State Class against LG. Plaintiffs' individual claims are brought under the laws of their home states.

132.    LG made an implied warranty to the Plaintiffs and the Class that Class Refrigerators were of merchantable quality and suitable for their ordinary and intended purpose.

133.    Through the conduct alleged herein, LG has breached the implied warranty of merchantability. The defectively designed Class Refrigerators are not fit for the ordinary and intended purpose for which Plaintiffs and the Class purchased them to perform, which in this Action, is the production of ice balls by the Craft Icemaker. LG knew that Plaintiffs and the Class were purchasing the Class Refrigerators for this purpose and marketed the Class Refrigerators for this purpose.

134.    Plaintiffs and the Class relied on LG's misrepresentations by purchasing the Class Refrigerators.

135.    LG knew or had reason to know that Plaintiffs and the Class were influenced to purchase the Class Refrigerators through LG's expertise, skill, judgment, and knowledge in furnishing products for their intended use.

136.    The Class Refrigerators were not of merchantable quality and were not fit for their ordinary purpose because the defects in materials and/or workmanship alleged herein render the Craft Icemaker incapable of producing ice balls.

137.    LG's actions, as complained of herein, breached their implied warranty that the Class Refrigerators were of merchantable quality as fit for such use, in violation of the UCC, the common law of this State, as well as the common law and statutory laws of other states.

138.    LG has failed to provide adequate remedies under its written express warranty, which has caused the express warranty to fail its essential purpose, thereby permitting remedies under implied warranties.

139.    LG has not sufficiently disclaimed the implied warranty of merchantability (specifically and conspicuously).

140.    Further, the purported remedial limitations in the warranty, including limiting the "exclusive remedy" to repairs using identically defective components, are procedurally and substantively unconscionable and thus fail under UCC § 2-302, as adopted by the States. LG knew or should have known that the Defect renders Class Refrigerators susceptible to premature failure, and that LG had unequal bargaining power and misrepresented Class Refrigerators' reliability, and the limited remedies unreasonably favor LG and fail Plaintiffs' reasonable expectations.

141.    LG was and is in privity with Plaintiffs and the Class by law and/or by fact.

142.    First, Plaintiffs have had sufficient direct dealings with LG and/or its authorized dealers, franchisees, representatives, and agents to establish privity of contract.

143.    Second, Plaintiffs and the Class are intended third-party beneficiaries of contracts, including express warranties, between LG and its dealers, franchisees, representatives and agents; LG's advertisements were aimed at Plaintiffs and the Class, and LG's warranties were expressly

written for the benefit of Plaintiffs and class members as end users of Class Refrigerators. LG's authorized dealers, franchisees, representatives, and agents, on the other hand, were not intended to be the ultimate consumers of Class Refrigerators and have no rights under the warranty agreements provided by LG; these intermediary entities made no changes to LG's product, nor made any additions to the warranties written and issued by Defendant.

144.    Third, LG is estopped from limiting claims for common law and statutory violations based on a defense of lack of privity.

145.    Plaintiffs and the Class have incurred damage as described herein as a direct and proximate result of the failure of LG to honor its implied warranty. In particular, Plaintiffs and the Class would not have purchased the Class Refrigerators had they known the truth about their defects; nor would they have suffered the damages associated with these defects.

146.    Plaintiffs and the Class are entitled to damages, as well as reasonable attorneys' fees and costs.

**COUNT IV**
**COMMON LAW FRAUD**
**(On Behalf of the Nationwide Class, or in the alternative, the State Subclasses)**

147.    Plaintiffs and the Class re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

148.    LG made material misstatements of fact to Plaintiffs and the Class regarding the defective nature of the Class Refrigerators, the performance capacity and longevity of the Class Refrigerators.

149.    These misstatements were made by LG with knowledge of their falsity, and with the intent that Plaintiffs and the Class would rely upon them.

150.    As described herein, LG fraudulently sold the Class Refrigerators with the Defect.

151.    At the time LG made these misrepresentations and omissions, and at the time Plaintiffs and the Class purchased the LG Refrigerators, Plaintiffs and the Class were unaware of the falsity of these misrepresentations, and reasonably believed LG's contentions about high quality and long-lasting nature of the Class Refrigerators to be true.

152.    In making these misrepresentations and concealments, LG knew they were false and that the Class Refrigerators were designed with the Defect and intended that Plaintiffs and the Class would rely upon such misrepresentations.

153.    Plaintiffs and the Class did, in fact, rely upon LG's misrepresentations and omissions concerning the performance capabilities of the Class Refrigerators, and their longevity as a high-quality refrigerator.

154.    As a direct and proximate result of LG's deceptive, fraudulent, and unfair practices, Plaintiffs and the Class have suffered an injury in fact and/or actual damages in an amount to be determined at trial.

155.    Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against LG for damages and declaratory relief.

## COUNT V
### UNJUST ENRICHMENT
**(On Behalf of the Nationwide Class, or in the alternative, the State Subclasses)**

156.    Plaintiffs and the Class re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

157.    Plaintiffs and the Class conferred a benefit on LG by purchasing the Class Refrigerators.

158.    LG had knowledge that this benefit was conferred upon them, but failed to disclose its knowledge that Plaintiffs and the Class did not receive what they paid for and instead made misstatements about their Class Refrigerators while profiting from this deception.

159.    LG has been unjustly enriched at the expense of Plaintiffs and the Class, and its retention of this benefit under the circumstances would be inequitable.

## COUNT VI
### VIOLATIONS OF THE MINNESOTA UNIFORM DECEPTIVE PRACTICES ACT
**Minn. Stat. § 325d.43, *er seq.***
**(On Behalf of the Minnesota Subclass)**

160.    The Heckner Plaintiffs and the Minnesota SubClass re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

161.    By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by misrepresenting the Class Refrigerators and their Craft Ice capabilities, i.e., that they are able to produce Craft Ice without malfunctioning. Such representations are misleading, inaccurate, and deceptive because the Class Refrigerators contain a Defect rendering them unable to perform properly.

162.    Defendant's business practice of marketing, advertising, and promoting its Class Refrigerators in this misleading, inaccurate, and deceptive manner constitutes unconscionable commercial practice, deception, and misrepresentation and, accordingly, constitutes multiple, separate violations of the Minnesota Deceptive Trade Practices Act ("Minnesota DTPA").

163.    The Minnesota DTPA prohibits deceptive trade practices. Minn. Stat. § 325D. 44.

164.    In marketing, advertising, and promoting the Class Refrigerators to consumers, Plaintiffs and members of the Minnesota Subclass, Defendant materially misrepresented and

omitted key aspects of the Class Refrigerators throughout the United States, including the State Minnesota.

165.    The foregoing deceptive acts and practices were directed at consumers.

166.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics, benefits, quality, and nature of the Class Refrigerators to induce consumers to purchase the same, and/or to pay a premium for them.

167.    Defendant's    unconscionable    commercial    practices,    false    promises, misrepresentations, and omissions set forth in this Complaint are material in that they relate to matters which reasonable persons, including Plaintiffs and members of the Minnesota Subclass, would attach importance to in making their purchasing decisions or conducting themselves regarding the purchase of the Class Refrigerators.

168.    Plaintiffs and members of the Minnesota Subclass were injured because: (a) they would not have purchased the Class Refrigerators or would not have purchased them on the same terms, had they known about the Class Refrigerators' Defect; (b) they paid a price premium for the Class Refrigerators based on Defendant's false and misleading statements; and (c) the Class Refrigerators did not have the characteristics and benefits promised because they have a Defect rendering them unable to produce Craft Ice. As a result, Plaintiffs and members of the Minnesota Subclass have been damaged in an amount to be proven at trial, but not less than either the purchase price of the Class Refrigerators or, alternatively, the difference in value between the Class Refrigerators as advertised and the Class Refrigerators as actually sold.

169.    Pursuant to Minn. Stat. §§ 8.31(3a), 325D.45, and 549.20(1)(a), on behalf of himself and other members of the Minnesota Subclass, Plaintiffs seek to enjoin the unlawful acts

and practices described herein, seeks an order awarding damages and any other just and proper relief under the Minnesota DTPA.

## IX.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, respectfully request that this Court:

A.    determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes, as defined above;

B.    appoint Plaintiffs as the representatives of the Class and their counsel as Class Counsel;

C.    award all actual, general, special (including treble), incidental, statutory, and consequential damages to which Plaintiffs and the Class are entitled;

D.    award pre-judgment and post-judgment interest on such monetary relief;

E.    grant appropriate injunctive and/or declaratory relief;

F.    award reasonable attorneys' fees and costs; and,

G.    grant such further relief that this Court deems appropriate.

## X.    <u>JURY TRIAL DEMAND</u>

170.    Plaintiffs respectfully demand a trial by jury on all issues so triable.

**DATED:** November 15, 2022                          Respectfully submitted,

*/s/ Zoe Aaron*
Zoe Aaron (350342021)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
405 E 50th Street
New York, NY 10022
Tel: 856-938-9023
zaaron@milberg.com

Gary Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Ste. 2100
Chicago, IL 60606
Tel: (847)-208-4585
gklinger@milberg.com

Nick Suciu III
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel.:(313) 303-3472
Fax:(865) 522-0049
nsuciu@milberg.com

Daniel O. Herrera
Edward A. Khatskin
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
135 S. LaSalle Street, 3210
Chicago, IL 60603
Tel.: (312) 782-4880
Fax: (312) 782-7785
dherrera@caffertyclobes.com
ekhatskin@caffertyclobes.com

Bryan L. Clobes
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
205 N. Monroe St.
Media, PA 19063
Tel. (215) 864-2800
Fax (215) 964-2808
bclobes@caffertyclobes.com

*Counsel for Plaintiffs and the Putative Class*